# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 13-106** |
| **GARY COTTRELL** | : | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

An examination of the facts of this case demonstrates that the defendant is a high risk of flight and a continuing danger to the community.  This case involves the use of threats and violence to make and collect extortionate loans from men and women, some of whom were senior citizens.  It also involves multiple counts of obstruction, with the defendant contacting seven separate witnesses and instructing them to lie in the government's ongoing grand jury investigation.  The defendant did all these things in direct violation of his bail conditions in state court, where he had been released after being charged with multiple counts of insurance fraud, bribery, theft by deception, and conspiracy.  Under these circumstances, there are no conditions or combination of conditions that will reasonably assure the presence of the defendant as required and/or the safety of the community.

## I. THE FACTS

In support of this motion, the government makes the following representations and proposed findings of fact:

### A. Probable Cause And The Evidence In This Case

1.      There is probable cause to believe that the defendant has violated Title 18, United States Code, Section 892(a), making extortionate extensions of credit; Section 894(a)(1),

collecting extensions of credit by extortionate means; and Section 1512(b)(3), obstruction, as contained in the indictment of March 7, 2013 .

   2. The evidence in this case is strong.  In extending credit to borrowers, defendant Cottrell, a former Philadelphia police officer, set the terms of loans for the borrowers. Cottrell required each borrower to repay the amount of money he loaned to them plus interest generally in an amount equal to $25 for every $100 he loaned to the borrower, generally for a term of four weeks.  The interest rate on these loans was oftentimes over 400% per annum.

   Four separate victim-witnesses borrowing money from Cottrell understood that he would use force, if necessary, to collect the money he loaned them plus the interest.  Four additional victim-witnesses experienced the defendant threatening them once they fell behind in their payments to him.

   When one victim told Cottrell that he was going to be late paying his loan, the defendant sent the victim a picture of a male with his head blown off.  At another time, he sent a text message to this same victim saying, "Don't start the BS because it's going to get dealt with quick.  You on borrowed time as it is."  Cottrell told another victim-witness that he had people looking for another late-paying borrower.

   Another borrower, a male approximately 68 years old, was confronted by Cottrell and pushed up against a wall as Cottrell demanded his payment.  Another borrower fled in fear to another state after the defendant told him that something bad would happen to him if he did not quickly pay back his loan.  To yet another borrower who was late in making his payments, the defendant said that if he did not start paying back the loan faster, people wouldn't recognize him.

Cottrell told one woman who was late with her loan payments that the next time he asked for the money, he was not going to be so nice.  The victim felt so threatened that she asked her mother to help her pay the loan.  Another female victim had the defendant unexpectedly show up at her door after she failed to meet him at the usual meeting place.  Another female victim borrowed money from the defendant while sitting in his car, next to the defendant's gun, which he had positioned in the console area.

Seven separate witnesses also testified that Cottrell asked them to lie to law enforcement officers when they were asked about interest payments to him.  This occurred after Cottrell had been served with a federal target letter by the FBI and was well aware of the grand jury investigation.

The defendant's loan shark business was not small.  A search warrant executed on April 18, 2011 at Cottrell's house seized approximately $70,000 in U.S. currency, two cell phones, and six marble-colored composition notebooks.  These notebooks were sent to the FBI Cryptologic Unit in Quantico, Virginia, and after reviewing the notations found in the book, the analyst's opinion was that these notebooks contained scanned images of documents that were consistent with suspected elicit loan records.  The analysis of these books also determined that in the opinion of the analyst, these books alone evidenced loans equaling approximately $288,000.

**B.**  **Maximum Penalties**

As a result of the sixteen counts charged in the indictment, the defendant is facing a maximum sentence of 320 years' imprisonment, 3 years of supervised release, a $4,000,000 fine, and a $1,600 special assessment.  The government estimates that the defendant faces a sentencing guidelines range of 46-57 months imprisonment.

- 3 -

C.    **Criminal Record**

The defendant was arrested in 2011 by local authorities for multiple counts of insurance fraud, bribery, theft by deception, and conspiracy.  He is awaiting trial for that case in August 2013.  While on bail for that case, he committed the offenses which are the subject of the current federal indictment.  His abject failure to follow his bail conditions tells this Court all that it needs to know about the defendant's desire to follow any bail conditions that this court would set in the present case.  As a former Philadelphia police officer, the defendant, more than most, should have known the importance of abiding by bail conditions.  It appears that he just did not care.

D.    **Ties to the Community**

While the defendant arguably has some ties to the community, the legislative history of the Comprehensive Crime Control Act of 1983 indicates that Congress found that community or family ties do not and should not weigh heavily in the risk of flight analysis. *See* Sen. Comm. on Judiciary, *Comprehensive Crime Control Act of 1983*, S. Rep. No. 98-225, 98th Cong., 1st Sess. 24, 25 (1983).

**II.**     **CONCLUSION**

When all these factors are viewed in light of the substantial sentence defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required and/or the safety of the community.

WHEREFORE, the government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


s/Anthony J. Wzorek
ANTHONY J. WZOREK
Assistant United States Attorney

- 5 -

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA              :

           v.              :              **CRIMINAL NO. 13-106**

GARY COTTRELL              :

### PRETRIAL DETENTION ORDER

AND NOW, this      day of March 2013, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

    (a)    the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

    (b)    the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

**A.**    **Probable Cause And The Evidence In This Case**

    1.    There is probable cause to believe that the defendant has violated Title 18, United States Code, Section 892(a), making extortionate extensions of credit; Section 894(a)(1),

collecting extensions of credit by extortionate means; and Section 1512(b)(3), obstruction, as contained in the indictment of March 7, 2013 .

   2. The evidence in this case is strong.  In extending credit to borrowers, defendant Cottrell, a former Philadelphia police officer, set the terms of loans for the borrowers. Cottrell required each borrower to repay the amount of money he loaned to them plus interest generally in an amount equal to $25 for every $100 he loaned to the borrower, generally for a term of four weeks.  The interest rate on these loans was oftentimes over 400% per annum.

   Four separate victim-witnesses borrowing money from Cottrell understood that he would use force, if necessary, to collect the money he loaned them plus the interest.  Four additional victim-witnesses experienced the defendant threatening them once they fell behind in their payments to him.

   When one victim told Cottrell that he was going to be late paying his loan, the defendant sent the victim a picture of a male with his head blown off.  At another time, he sent a text message to this same victim saying, "Don't start the BS because it's going to get dealt with quick.  You on borrowed time as it is."  Cottrell told another victim-witness that he had people looking for another late-paying borrower.

   Another borrower, a male approximately 68 years old, was confronted by Cottrell and pushed up against a wall as Cottrell demanded his payment.  Another borrower fled in fear to another state after the defendant told him that something bad would happen to him if he did not quickly pay back his loan.  To yet another borrower who was late in making his payments, the defendant said that if he did not start paying back the loan faster, people wouldn't recognize him.

- 2 -

Cottrell told one woman who was late with her loan payments that the next time he asked for the money, he was not going to be so nice.  The victim felt so threatened that she asked her mother to help her pay the loan.  Another female victim had the defendant unexpectedly show up at her door after she failed to meet him at the usual meeting place. Another female victim borrowed money from the defendant while sitting in his car, next to the defendant's gun, which he had positioned in the console area.

Seven separate witnesses also testified that Cottrell asked them to lie to law enforcement officers when they were asked about interest payments to him.  This occurred after Cottrell had been served with a federal target letter by the FBI and was well aware of the grand jury investigation.

The defendant's loan shark business was not small.  A search warrant executed on April 18, 2011 at Cottrell's house seized approximately $70,000 in U.S. currency, two cell phones, and six marble-colored composition notebooks.  These notebooks were sent to the FBI Cryptologic Unit in Quantico, Virginia, and after reviewing the notations found in the book, the analyst's opinion was that these notebooks contained scanned images of documents that were consistent with suspected elicit loan records.  The analysis of these books also determined that in the opinion of the analyst, these books alone evidenced loans equaling approximately $288,000.

**B.**     **Maximum Penalties**

As a result of the sixteen counts charged in the indictment, the defendant is facing a maximum sentence of 320 years' imprisonment, 3 years of supervised release, a $4,000,000 fine, and a $1,600 special assessment.  The government estimates that the defendant faces a sentencing guidelines range of 46-57 months imprisonment.

- 3 -

### C.    <u>Criminal Record</u>

The defendant was arrested in 2011 by local authorities for multiple counts of insurance fraud, bribery, theft by deception, and conspiracy.  He is awaiting trial for that case in August 2013.  While on bail for that case, he committed the offenses which are the subject of the current federal indictment.  His abject failure to follow his bail conditions tells this Court all that it needs to know about the defendant's desire to follow any bail conditions that this court would set in the present case.  As a former Philadelphia police officer, the defendant, more than most, should have known the importance of abiding by bail conditions.  It appears that he just did not care.

### D.    <u>Ties to the Community</u>

While the defendant arguably has some ties to the community, the legislative history of the Comprehensive Crime Control Act of 1983 indicates that Congress found that community or family ties do not and should not weigh heavily in the risk of flight analysis. *See* Sen. Comm. on Judiciary, *Comprehensive Crime Control Act of 1983*, S. Rep. No. 98-225, 98th Cong., 1st Sess. 24, 25 (1983).

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a

Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE CAROL SANDRA MOORE WELLS
United States Magistrate Judge

<u>CERTIFICATION</u>

       I certify that this document has been electronically filed and is available for viewing and downloading from the ECF system by:

       Jack McMahon, Esq.

s/Anthony J. Wzorek

ANTHONY J. WZOREK

Assistant United States Attorney

United States Attorney's Office

615 Chestnut Street; Suite 1250

Philadelphia, PA 19106-4476

(215) 861-8469

State Bar ID # 32639

Date:   March 11, 2013